## MILDRED HOWARD *v.* CITY OF JACKSON.

### [47 South., 379.]

CITY OF JACKSON. *Pearl river bridge. Defects in. Streams separating counties. Statutes applicable.*

The city of Jackson is not liable for injuries resulting from defects in the bridge over Pearl river, separating the city and Hinds county, on the west, from Rankin county, on the east, although the injury was inflicted on that part of the bridge within the city limits. Laws 1870, pp. 561–563; Laws 1874, pp. 256–258; Laws 1833, p. 15, § 27; Hutchinson's Code, p. 254, §§ 27, 28; Code 1857, p. 178, art. 38; Code 1871, § 2374; Code 1880, § 868; Code 1892, § 3937; Code 1906, § 4449.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

Mrs. Howard, appellant, was plaintiff in the court below; the city of Jackson was defendant there. From a judgment in defendant's favor plaintiff appealed to the supreme court.

The plaintiff's horses were badly injured and died from their injuries, resulting from defects in a bridge across Pearl river; the stream separating the city and the county of Hinds on the west from Rankin county on the east. The defects in the bridge were in that part of it west of the center of the stream and within the limits of the city.

*Hallam & Hallam,* for appellant.

By the Constitution of 1890, sec. 88, the legislature was directed "to pass general laws. . . . under which cities and towns may be chartered and their charters amended," and pursuant to the provisions of that section, on April 2, 1892, Chapter 93, Code 1892, was enacted. On April 12, 1892, the Mayor and board of aldermen of the city of Jackson declared their acceptation of said chapter, and a transcript of the proceedings of the mayor and board of aldermen was presented to the governor,

who thereupon issued his proclamation declaring Jackson a city according to the chapter on municipalities of.the Code of 1892; —of which proclamation this court will take judicial notice. *Ex parte Shlomberg,* 70 Miss., 47, 11 South., 721.

It is therefore beyond dispute that the appellee is operating under Chapter 93, Code 1892. By sec. 2939 of that code (Code 1906, § 3330), it is provided that "each municipality shall constitute a separate road district," etc., and that section provides for the working of streets. Sec. 2945 (Code 1906, § 3336), provides that the municipality shall.have power to "close and vacate any street or alley, or any portion thereof." Sec. 2946 (Code 1906, § 3337), provides that the municipality shall have power "to exercise the right of eminent domain in the laying of streets, avenues, alleys and parks, and in straightening or widening the streets, or changing the grade thereof," etc. Sec. 2947 (Code 1906, § 3338), gives municipalities the power "to exercise full jurisdiction in the matter of streets, sidewalks, sewers and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn and light the same." Sec. 3000 (Code 1906, § 3397), provides that "the street commissioner shall . . . have general control of the streets, alleys, avenues and sidewalks; he shall see that they are always in proper repair; he shall have the same worked, repaired, altered, paved, lighted, sprinkled and everything else done that ought to be done to keep the same in good repair and condition."

The argument that because the bridge was built by the county, the city is not liable for damages for accidents occurring thereon, we submit is not sound. Suppose it had been a plain dirt road, built by the county and maintained by it time out of mind, and the city had thereafter elected to come under the code chapter on municipalities, could the city be heard to say that it ought to escape liability because the road had been built by the county? Or, suppose it had been necessary to extend the bridge over several miles of one of the streets of Jackson—either of the streets —and the city, with its eyes open had elected to come un-

der the code chapter—would this court listen to an argument that the city was not liable because the bridge was built by the county? Should the city's liability cease at the end of the bridge, although the bridge covered several miles of that self-same street? If so, that part of the chapter on municipalities with reference to streets is defeated, and its plain and unmistakable language rendered meaningless. The law says that the city's liability extends to its corporate limits, and it means exactly what it says. The law says that the city may close any of its streets, and, if so, it could close that bridge at the middle of Pearl river. If it is given such unlimited privileges as this, can it be said with any degree of reason that it is not under a corresponding duty to maintain and keep in proper repair that portion of the bridge within its limits which is a part of its street? What must the street commissioner do with reference to streets? "He shall see that they are always in proper repair." Counsel rely on the Act of 1874, pp. 256–258, which authorized Hinds county to issue bonds to the city of Jackson in payment for this bridge. But the city of Jackson can not claim any benefit under that act, for thereafter, of its own free will and accord, speaking through its authorized officers, on April 12, 1892, with full knowledge of all the duties and liabilities which would be imposed by the chapter of the code entitled municipalities, it *elected* to come thereunder. It thereby acquired new privileges, and at the same time had new duties and liabilities imposed upon it, among them the plain and emphatic duty of properly maintaining and keeping in repair the streets—meaning all of the streets and each and every part thereof—within its corporate limits, over which streets it was given complete and supreme control.

It seems to us that the question here presented has been forever put at rest by the decision of this court in *Blocker* v. *State.* In that case the court say, in part: "The town, so far as highways are concerned, is a 'separate road district.' Its street

commissioner' is its exclusive 'road overseer.' Full jurisdic-
tion over its streets is vested in the town authorities (*theretofore
in the board of supervisors while the streets were county high-
ways*). Whenever any town adopts this chapter as the law of
its being, the jurisdiction over the public roads and highways
within its limits, theretofore in the board of supervisors, rests
thereafterward *exclusively* in such town." A more precise and
positive statement of the law could hardly be framed. *Blocker*
v. *State,* 72 Miss., 720, 18 South., 388. (See authorities cited
in *Blocker* v. *State.*)

We contend that the board of supervisors has no authority
to authorize its road overseer, or any road overseer, to go within
the limits of the city of Jackson to repair or in any way inter-
fere with that portion of this bridge which lies within the city
and is a part of the city's street. The city is armed with the
power to levy and collect taxes to be used in its internal improve-
ment, and it is *its* duty to repair and keep in a reasonably safe
perform that duty. *Blocker* v. *State, supra,* and authorities
cited.

We call the court's especial attention to the following authori-
ties, which we think support appellant's contention. *Goshen* v.
*Myers,* 119 Ind., 196; 21 N. E., 657; *Perkins* v. *Oxford,* 66
Me., 545; *Sheridan* v. *Palmyra,* 180 Pa. St., 439; 36 Atl., 868;
*Whitman* v. *Groveland,* 131 Mass., 553.

*McWillie & Thompson,* for appellee.

The city of Jackson, as is known judicially, is situate on
Pearl river and the river is the boundary between Hinds and
Rankin counties. There was a time in the history of Jackson
when its municipal limits extended across the river and embraced
a small part of Rankin county, but the center of the stream has
been the eastern boundary of the municipalty for many years.

It is apparent from our statutes, Laws 1870, pp. 561, 563,
and Laws 1874, pp. 256, 258, that preceding their enactment the

bridge over Pearl river at Jackson was a toll bridge, operated and maintained by private persons.

It will be noted that the city under these statutes was to acquire only a leasehold interest from the private persons who were collecting tolls and that these persons themselves only owned such an interest. To whom did the reversionary interest belong? Under the law in force from 1833 until now the counties alone were authorized to construct and maintain and alone had jurisdiction of bridges over streams separating two counties. Laws 1833, p. 15, sec. 27, Hutchinson's Code, p. 254, §§ 27, 28; Code 1857, p. 78, art. 38; Code 1871, § 2374; Code 1880, § 868; Code 1892, § 3937; Code 1906, § 4449. The counties therefore alone had the right to invest the private persons who owned it with the leasehold interest, the acquisition of which by the city was provided for by the act of 1870.

It would seem to follow therefore that the counties of Hinds and Rankin owned the reversionary interest in the bridge in question in 1870 when the act was passed, and that in some way, unnecessary to be developed in this case, Rankin county has lost out and Hinds county is the present owner of the entire bridge. To return to the act of 1870; while it is seemingly somewhat obscure its meaning is plain enough when considered in the light of the last clause of its preamble, reading thus:—

"Whereas, also, the Jackson end of said (Hinds) county fully deserves the building (buying) of this bridge at the hands of the said county in the general system of county bridges."

The act authorized the city to contract with the private owners for a purchase of their leasehold interest in the bridge and to issue bonds to raise money for so doing; directed the city authorities to report to the board of supervisors of Hinds county the amount paid by the city for the bridge lease, and required the supervisors "to remit the collection of the tax for general county bridge purposes upon all property within the limits of the city until such a time as an amount shall have been so re-

mitted, equal to the amount paid by the city for the bridge lease as aforesaid, Provided that the city of Jackson shall keep up all bridges and roads within her limits, until such a time as said county bridge tax shall have been resumed."

That the leasehold interest in the bridge was acquired under the act of 1870 is manifested by the act of March 31, 1874. This act required Hinds county to issue to the city of Jackson bonds to reimburse the city for its outlay in purchasing the bridge (lease) stopped the remission of county bridge taxes on property in Jackson, and specially provided (sec. 7), that the statute "should not be so construed as to require or make it obligatory upon the county to build or keep in repair any bridge or bridges within the corporate limits of the city of Jackson, other than the aforesaid bridge over Pearl river and the bridge on South street in said city of Jackson."

Looking to the act of 1870 it seems manifest that the city of Jackson was not required to keep up bridges and roads within her limits generally, and the imposition of that duty by the proviso to sec. 7, of the act was effective only until the return of the county bridge tax therein mentioned.

By the act of 1874, county bonds were given the city in full satisfaction, and this terminated the operative effect of the proviso mentioned. The legislature, however, to make clear what bridges within the city the county was obliged to keep in repair expressly provided, Laws 1874, p. 257, 258, sec. 7, that it shall not be obligatory on the county to maintain any of the bridges except the bridge over Pearl river and the one on South street, and this is the exact equivalent of a provision that the county should maintain the bridge in question.

If it be ascertained from these statutes that the ownership of the bridge is in the city of Jackson, this does not by any means impose the duty of maintenance upon the city where as by the act that duty is imposed upon the county.

A bridge is an entirety and for this reason bridges over

streams separating two counties are not within the general statutes on the subject of roads and bridges, but have always been made the subject of special statutory provisions.

There is no instance, we dare say, of any municipality, without express legislative warrant, having assumed to erect or maintain a bridge over a stream separating two counties. Where an express statute provides for the erection of such bridges by the counties and no statute expressly imposes such duty on a municipality, the case does not fall within the general provisions of law requiring municipalities to maintain bridges within corporate limits. The very case before the court illustrates. If Jackson has to maintain a part of a bridge and can go no further than the center of the stream, the limit of her territory, nothing is accomplished, unless there is some provision for the maintenance of that part of it lying east of the center of the river. There is no provision for the city and the county of Rankin jointly building and maintaining the structure. There is provision for Hinds and Rankin counties doing so. If the city entered upon the construction and maintenance of that part of a bridge lying to the west, and Rankin county should undertake to construct and maintain that part of it to the east, of the center of the stream, there is no provision of law by which an agreement touching the location, character or type of the bridge or the materials of which the structure should be built, could be had or differences about these and many other matters adjusted. And after its building there is no provision for its management or repair by the city and some county in which the city is not located. A bridge is an entirety. Jurisdiction over the left hind leg of a horse would never be granted by sensible law makers to one tribunal and over the balance of the animal to another. Joint jurisdiction of the bridge in question is conferred on Hinds and Rankin counties and nowhere else.

The written statement of appellant's cause of action avers "that while the bridge across Pearl river was built by and under the jurisdiction and control of the county of Hinds, the city of

Jackson had and did on divers occasions shortly before the in-- jury complained of, repair the said bridge when in a dangerous and unsafe condition." The averment does not aid appellant's case. It shows affirmatively that the bridge was a county bridge; and if it be true that the city had it repaired, ever so often, its acts in so doing cannot be complained of by the persons using the bridge; its acts in repairing the structure were for the benefit and advantage of the traveling public. If, without being under obligation to do so, the city repaired the bridge, the laws of the state were not thereby changed and the duty of maintaining the bridge removed from one governmental agency and imposed upon another. Had some considerate citizen living in the neighborhood removed defective planks from the floor of the bridge and put sound ones in their places every week for twenty years preceding the accident complained of, he would not be liable to appellant for the loss of her horses, and the city is, if anything, even less so, because it could do nothing beyond its own limits and the repairs it is charged to have put upon the bridge are not averred to have been made on any particular part of the structure and may have all been made on that part of it in Rankin county.

There is no pretense that the accident to plaintiff's horses resulted from negligent and defective work done by the city in an effort to repair the bridge.

We do not see the pertinency of the case of *Blocker* v. *State,* 72 Miss., 720, 18 South., 388, cited by appellant. That case in no way related to a bridge built over a stream separating two counties; it in no way involved the special case here presented. While the general subject of roads was there under consideration, the special and exceptional features here involved were, we dare say, not thought of by the court or counsel.

Jackson's acceptance of the code chapter on municipalities did not in any way affect its rights or extend its liabilities beyond what they would have been had the code provided (as it should have done and as the, 1892, code commissioners recommended)

that the chapter should at once upon its passage be applicable to all municipalities in the state.

All of the provisions of the code chapter on municipalities relating to bridges refer to bridges wholly within the municipality; not once is any mention made of parts or pieces of bridges; the only provision for bridges over streams separating counties is the special one already cited.

*Per Curiam.—Affirmed.\**

,WILLIAM L. GAMBRELL v. STATE OF MISSISSIPPI.

[46 South., 138; 17 L. R. A. (N. S.), 291.]

3. SAME. *How legal doubts resolved.*

Where there is a serious doubt in a criminal case touching the admissibility of evidence, or regarding the propriety of an instruction, it should be resolved in favor of the accused.

FROM the circuit court of Smith county.

HON. ROBERT L. BULLARD, Judge.

Gambrell, appellant, was indicted and tried for the murder of

---

\* While the opinion in this case consists of the one word "affirmed," yet the reporter feels justified in reporting the case not only because of its local importance, but because it may have application to several other bridges in the state.